**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Miriam Mendiola-Martinez,<br><br>                    Plaintiff,<br><br>v.<br><br>Joseph M. Arpaio, et al.,<br><br>                    Defendants. | No. CV11-02512-PHX-DGC<br><br>**ORDER** |

Plaintiff Miriam Mendiola-Martinez commenced this action against Defendants Sheriff Joseph Arpaio ("Sheriff Arpaio"), Maricopa County (the "County") (collectively the "County Defendants"), and the Maricopa County Special Health Care District ("MCSHCD") on December 19, 2011. Doc. 1. She filed an amended complaint on May 14, 2012. Doc. 7. MCSHCD filed a motion for summary judgment on July 25, 2013. Doc. 72. The County Defendants filed a motion for summary judgment on September 19, 2013. Doc. 89. Plaintiff filed separate motions for partial summary judgment against the County Defendants (Doc. 91), and MCSHCD (Doc. 92), on September 21, 2013. The motions are fully briefed. For the reasons that follow, the Court will deny Plaintiff's motions and grant Defendants' motions.[1]

**I.    Background.**

Plaintiff was arrested by the Scottsdale Police Department on October 23, 2009, for felony identity theft. Doc. 89 at 1. She had been working under another person's

---

[1] The parties' requests for oral argument are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1 name because she was an undocumented immigrant. Doc. 91 at 6. At the time of her
2 arrest, Plaintiff was six months pregnant. *Id.* Plaintiff was booked at the County's
3 Fourth Avenue Jail (Doc. 91 at 7) and was transferred to the Estrella Jail for housing
4 (Doc. 89 at 1). Plaintiff contends that while housed at Estrella Jail she was "frequently
5 hungry" and "worrie[d] that her baby [would] die inside of her" as a result of the "meager
6 diet and lack of sanitary water." *Id.* at 8. The County Defendants note that Plaintiff was
7 "provided a modified diet for pregnant women that consisted of the regular diet
8 supplemented with an additional 32 ounces of milk . . . and a prenatal vitamin." Doc. 89
9 at 2. Plaintiff also alleges that she was not provided with food or water for "long periods
10 of time" when transported to court. Doc. 91 at 8.

11 Plaintiff first experienced labor pains on December 20, 2009, at which time she
12 was transported to Maricopa Integrated Health Services ("MIHS"). Doc. 89 at 2. During
13 the transport, Plaintiff's hands were cuffed in front of her body. *Id.*, Doc. 91 at 9.
14 Plaintiff also alleges that she was shackled at the ankles. Doc. 97-1, ¶ 13. Medical staff
15 monitored Plaintiff and determined that she was not in labor. Doc. 89 at 2. Plaintiff was
16 then transported back to the Estrella Jail. *Id.*; Doc. 91 at 9. The following day, Plaintiff
17 was experiencing additional pain and was again transported to MIHS. Doc. 89 at 2;
18 Doc. 91 at 10. Officer Hertig, the detention officer who accompanied Plaintiff during her
19 transport, testified that Plaintiff was initially handcuffed in the front and that she did not
20 recall whether the handcuffs were removed during transport. Doc. 94-7 at 31; Doc. 91 at
21 9. Plaintiff does not recall being handcuffed during this transport. Doc. 91 at 9.

22 After arriving at the hospital, doctors performed a successful cesarean section to
23 deliver a healthy baby boy. Doc. 89 at 2. Plaintiff was not restrained while in labor at
24 the hospital or during delivery. *Id.*; Doc. 72 at 2. Officer Hertig remained in the delivery
25 room throughout Plaintiff's procedure. Doc. 91 at 10. Plaintiff was subsequently moved
26 to a recovery room and a leg restraint was placed on her ankle. Doc. 89 at 2; Doc. 91 at
27 10. The leg restraint consisted of a plastic cuff that went around Plaintiff's ankle which
28 was attached to a metal chain long enough to provide Plaintiff with "full and

unencumbered access to the restroom." Doc 89 at 3; Doc. 91 at 10; Doc. 72 at 3. Plaintiff's leg restraint was loosened by a detention officer on one occasion in response to her complaint that the restraint was too tight. Doc. 89 at 3. MCSHCD contends that Plaintiff did not complain about the restraint to the hospital staff. Doc. 72 at 3.

Plaintiff complains that she was not provided with regular access to her newborn and that she was neither permitted to breastfeed nor provided with any way to release her breast milk. Doc. 91 at 10-11. She contends that two days after delivering her child, while "still bleeding from her delivery," she was "bound at her hands and ankles" and "forced to walk through the hospital," where she was then "chained to other prisoners for transport back to jail." *Id.* at 11. She further contends that she was not offered a wheelchair during her discharge. *Id.* The County Defendants respond that Plaintiff had been cleared for discharge and was first escorted from her room to an inmate waiting area and then back to her room to receive pre-release medication and finally back to the waiting area. Doc. 89 at 3. On December 24, 2009, Plaintiff appeared in court for sentencing, during which time she contends that her breasts were "leaking milk," and that she was "bleeding into her jail pants." Doc. 91 at 11. MCSHCD notes that Plaintiff does not claim that either she or her child suffered any injury as a result of her care at MIHS. Doc. 72 at 4.

Plaintiff has asserted claims against the County Defendants and MCSHCD for deliberate indifference to serious medical needs in violation of the Eighth Amendment ("Count One"), deliberate indifference to serious medical needs in violation of the Equal Protection Clause of the Fourteenth Amendment ("Count Two"), cruel and unusual punishment in violation of the Eighth and Fourteenth amendments ("Count Three"), "disparate treatment" in violation of the Fifth, Fourteenth, and Fifteenth Amendments ("Count Four"), and "*Monell* liability," ("Count Five"). Doc. 7 at ¶¶ 75-105.

**II.    Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record]

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.  Analysis.**

    **A.  Deliberate Indifference Claims.**

An official violates the Eighth Amendment "when he acts with 'deliberate indifference' to the serious medical needs of an inmate." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard – that the deprivation was serious enough to constitute cruel and unusual punishment – and a subjective standard – deliberate indifference." *Snow*, 681 F.3d at 985. The objective standard requires that "the denial of a plaintiff's serious medical need must result in the 'unnecessary and wanton infliction of pain.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). As to the subjective standard, "deliberate indifference requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Snow*, 681 F.3d at 985 (quoting *Farmer*, 511 U.S. at 835). An official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The indifference to medical needs, however, "must be substantial; a constitutional violation is not established by negligence or 'an inadvertent failure to provide adequate medical

care.'" *Anderson v. Cnty of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995) (quoting *Estelle*, 429 U.S. at 105-06); *see Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.").

Plaintiff makes several deliberate indifference arguments. First, she argues that the County Defendants were deliberately indifferent to her serious medical needs when they restrained her during her transport to and from the hospital and while she was recovering. Doc. 91 at 8. Next, she argues that MCSHCD was deliberately indifferent to her serious medical needs by "deferring to law enforcement" on the issue of whether or not Plaintiff would be restrained. Doc. 92 at 16. Additionally, she appears to argue that the diet provided by the County Defendants was inadequate and demonstrated deliberate indifference to her serious medical needs. Doc. 91 at 3. Finally, she argues that both MCSHCD and the County Defendants were deliberately indifferent to her serious medical needs by failing to allow her to breastfeed or to provide her with medication or equipment to otherwise release milk or cease lactation. *Id.* at 4-5; Doc. 92 at 19. The Court will consider each argument in turn.

### 1. Shackling Claims against the County Defendants.

The County Defendants contend that the restraints used on Plaintiff were appropriate and, in any event, that they are protected by qualified immunity. Doc. 89 at 6. They argue that the "doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (citing *Clouthier v. Cnty of Contra Costa*, 591 F.3d 1232, 1240 (9th Cir. 2010)). "In considering a claim of qualified immunity, the court must determine 'whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right,' and 'whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct.'" *Contra Costa*, 591 F.3d at 1241 (quoting *Pearson v. Callahan*, 555 U.S. 223, 230 (2009)). Whether a right is clearly established turns on the

1  "objective legal reasonableness of the action, assessed in light of the legal rules that were
2  'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639
3  (1987); *Contra Costa*, 591 F.3d at 1241.

4  The Court finds that Plaintiff has not demonstrated that a clearly established
5  constitutional right was violated here.  Defendants argue that no law existed at the time of
6  Plaintiff's incarceration that would have placed them on notice that restraining a pregnant
7  inmate is unconstitutional.  Doc. 89 at 8.  They further contend that "restraining pregnant
8  inmates during transport remained routine practice in almost every prison and jail in the
9  United States." *Id.*  Additionally, they argue that at the time of Plaintiff's incarceration,
10 no state or federal case in Arizona had addressed the issue of restraining pregnant
11 inmates. *Id.*

12 Plaintiff argues that both the Arizona Department of Corrections and the United
13 States Bureau of Prisons had ended the practice of restraining pregnant inmates years
14 earlier.  Doc. 91 at 19.  These polices, however, are not legal rules that would have bound
15 the County Defendants.  Plaintiff also advances *Women Prisoners of D.C. Department of*
16 *Corrections v. District of Columbia*, 877 F.Supp 634, 668-69 (D.D.C. 1994), *Villegas v.*
17 *Metropolitan Government of Nashville*, 709 F.3d 563 (6th Cir. 2013), and *Nelson v.*
18 *Correctional Medical Services*, 583 F.3d 522 (8th Cir. 2009), as support for her position
19 that shackling pregnant women is unconstitutional.  But these cases do not create a
20 clearly established constitutional right as they are not binding in the Ninth Circuit and are
21 based on factual circumstances not present here.  *See Nelson*, 583 F.2d at 526 (noting that
22 Nelson's legs were both shackled to "opposite sides of her hospital bed," that she was
23 "well into the final stages of labor when [the correctional officer] shackled her," and that
24 "the shackles prevented her from moving her legs, stretching, or changing positions");
25 *Women Prisoners*, 877 F.Supp at 646 ("When Defendants transport pregnant women
26 prisoners on medical visits they customarily place women in leg shackles, handcuffs and
27 a belly chain with a box that connects the handcuffs and belly chain."); *Villegas*, 709 F.3d
28 at 566-67 (noting that "Plaintiff was placed on a stretcher with her wrists handcuffed

1  together in front of her body and her legs restrained together," that one of her legs was
2  "restrained to the hospital bed" while she was in active labor, that law enforcement
3  officials did not remove restraints despite the entry of a physician's order requesting their
4  removal, and that upon the plaintiff's discharge, the law enforcement agency "did not
5  allow Plaintiff to take the breast pump that the Hospital staff had provided her.").

6  Plaintiff alleges she was handcuffed in the front and shackled at the ankles during
7  her first transport, handcuffed during her second transport while she was in active labor,
8  and restrained to the bed after she had given birth and had been moved to a recovery
9  room.  Plaintiff also notes that the detention officer riding with her during her second
10 transport to the hospital removed her restraints at the request of a paramedic, and there is
11 no evidence that any physician requested the removal of any restraint.  Based on the
12 "legal rules" Plaintiff contends were established at the time of the events in this case – a
13 1994 D.C. Circuit case and a then-recently released Eighth Circuit case – the Court
14 cannot say that it was objectively unreasonable to place restraints on Plaintiff during
15 transport and during her recovery.  Even assuming the County Defendants were aware of
16 these cases, neither court held that it is *per se* unconstitutional to restrain a pregnant
17 woman at any point in her pregnancy.  The Court finds that Plaintiff's evidence does not
18 create a genuine issue of material fact here.  The Court will grant summary judgment for
19 the County Defendants on these claims.

20 **2.  Shackling Claims against MCSHCD.**

21 Plaintiff argues that MCSHCD and its staff "were far more than negligent in
22 allowing her to be shackled while she was their patient."  Doc. 92 at 16.  She also argues
23 that the County Defendants created a risk of harm by handcuffing Plaintiff while she was
24 in active labor and shackling her to her bed while she recovered.  Doc. 91 at 18.  As
25 support for these arguments, she claims that "[s]ince 1994, federal courts have recognized
26 that the shackling of women prisoners in their third trimesters of pregnancy and
27 immediately after delivery is particularly offensive to contemporary standards of
28 decency."  Doc. 91 at 18; Doc. 92 at 15-16.  MCSHCD counters that Plaintiff did not

1 inform any member of its staff that the restraint caused her pain, and that the facts show
2 Plaintiff was properly cared for while at MIHS. Doc. 72 at 7.

3 The evidence shows that Plaintiff was not restrained during her delivery. As noted
4 by MCSHCD, Plaintiff did not inform any doctor, nurse, or other MIHS staff member
5 that any form of restraint used during her time at the hospital was causing her pain or
6 interfering with her treatment. Dr. LaValley, who treated Plaintiff during her stay at
7 MIHS, testified that she requests that shackles or restraints be removed "[i]f they're
8 interfering with the mother's ability to walk or to breastfeed." Doc. 94-5 at 24, 3-4.
9 There is no evidence that any such request to remove restraints was made by Plaintiff or a
10 medical professional. Accordingly, Plaintiff has neither demonstrated that any official
11 employed by MCSHCD was "aware of facts from which the inference could be drawn
12 that a substantial risk of serious harm exist[ed]," nor has she presented evidence that any
13 MIHS staff member drew such an inference. *See Toguchi v. Chung*, 391 F.3d 1051, 1058
14 (9th Cir. 2004) (holding that because the defendant doctor did not believe that a
15 prescribed medication "presented a serious risk of harm to [the plaintiff], her conduct
16 cannot constitute deliberate indifference"). Further, the expert opinion offered by
17 Plaintiff (Doc. 94-4) is not instructive as to the deliberate indifference standard.

18 Finally, to the extent Plaintiff argues that the risk of the restraints applied to her in
19 this case was "well-established" by either *Nelson* or *Women Prisoners*, she is mistaken.
20 As noted above, the pregnant inmates in these cases were restrained to a greater extent
21 than Plaintiff, and these cases do not establish that any restraints – such as the tether
22 restraint used in this case – pose a substantial risk of harm. The Court will grant
23 summary judgment for MCSHCD on this count.

24 **3. Diet Claims.**

25 Plaintiff alleges that the diet she received while incarcerated was inadequate
26 (Doc. 7, ¶¶ 24-27), and that she was worried her child would die due to improper
27 nutrition (Doc. 91 at 8). She also claims that she "had to go extended periods of time
28 without food or water," when she was transported to court and that on one occasion, a

fellow inmate asked a guard to give Plaintiff food because she was hungry and the guard said he had no food and proceeded to "walk[] by with his own sack lunch and [shake] it at the inmates, teasing [them]." Doc. 93-2 at 2. Plaintiff's statements, without more, do not show a constitutional violation. There is no indication as to what Plaintiff means by "long periods of time," and it is therefore impossible for the Court to determine whether the County Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed or whether the County Defendants drew such an inference. As to the alleged incident with the guard, Plaintiff does not contend that she was not fed at all on the date in question. Rather, she alleges that a fellow inmate asked a guard for food and the guard said he did not have any. Plaintiff cites no authority for the proposition that refusing to provide food to a pregnant inmate outside of a regularly scheduled meal constitutes a violation of the Eighth Amendment. The Court declines to so hold on these facts.

There is evidence in the record that Plaintiff was provided with a regular diet, supplemented with additional milk and a prenatal vitamin. Doc. 89 at 2. Plaintiff does not contend that she was denied food altogether. That she was hungry while in jail does not establish deliberate indifference on the part of the County Defendants. Further, in spite of Plaintiff's frequent citations to *Graves v. Arpaio*, the judgment and findings in that case do not create an issue of material fact here. Accordingly, the Court will grant summary judgment for the County Defendants on Plaintiff's deliberate indifference claims related to her prison diet.

### 4. Breastfeeding and Lactation Claims.

Plaintiff argues that the County Defendants' policy of "prohibiting post-partum mothers from using a (sic) medically recommended and related supplies, and denying a post-partum mother her prescribed pain medication," demonstrates deliberate indifference to her serious medical needs. Doc 7, ¶ 85. She also appears to include MCSHCD in these claims. Doc. 92 at 19; Doc. 98 at 13-14. The County Defendants argue that Plaintiff has not provided evidence that she was denied medication, and that

1 she was not prescribed a breast pump while at the hospital and did not request one once
2 she returned to jail.  Doc. 89 at 12.

3 Plaintiff once again has failed to support her deliberate indifference claim.  Not
4 only has she failed to support her factual allegations with evidence, but she has failed to
5 present any legal authority supporting her assertion that her non-receipt of a breast pump
6 violated her constitutional rights.  In the *Villegas* case cited by Plaintiff, the court
7 reversed a grant of summary judgment to the plaintiff, holding that "[a]bsent proof that
8 the breast pump was prescribed, as is necessary under a diagnosed medical-needs theory,
9 Plaintiff must show that it was so obvious that even a layperson would recognize the need
10 to provide Plaintiff with a breast pump." *Villegas*, 703 F.3d at 579.  There is no evidence
11 that Plaintiff was prescribed a breast pump, and Plaintiff has not shown that her need for
12 a breast pump would be obvious to a layperson.

13 For the reasons outlined above, the Court will grant summary judgment for all
14 Defendants on Counts One and Two.

15 **B.     Cruel and Unusual Punishment Claims.**

16 Plaintiff sets forth the legal standard for her cruel and unusual punishment claim
17 by stating that "[d]eliberate indifference to serious medical needs of prisoners constitutes
18 the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth
19 Amendment."  Doc. 92 at 13.  The Court has already determined that Plaintiff has failed
20 to present evidence demonstrating deliberate indifference to a serious medical need on
21 the part of any Defendant.  To the extent Plaintiff intended to state a separate cruel and
22 unusual punishment claim, she has provided no arguments or evidence supporting such a
23 claim.  *See id.* at 20.  The Court will grant summary judgment for the Defendants on
24 Count Three.

25 **C.     Disparate Treatment.**

26 Plaintiff argues that the Arizona Bailable Offenses Act ("ABOA"), under which
27 she was held without bond, "creates a disparity between women who are born in the
28 United States and those of other national origins" because it "requires that persons whom

- 10 -

the State believes are in the country illegally to be held without bond, if they are charged with a felony." Doc. 7, ¶¶ 92-93. As a result, she contends, pregnant women who are unable to prove that they are legally in the United States and are charged with a felony "are more likely to be subject to shackling than similarly-situated United States citizens." *Id.*, ¶ 95. She argues that a United States citizen in the same circumstances – no criminal history and charged with a non-violent crime – would have been released and not detained. Doc. 91 at 21. The ABOA states, in relevant part, that "[a] person who is in custody shall not be admitted to bail if the proof is evident or the presumption great that the person is guilty of . . . [a] serious felony offense if there is probable cause to believe that the person has entered or remained in the United States illegally." Ariz. Rev. Stat. § 13-3961(A)(5).

A neutral law that "has a disproportionately adverse effect upon a racial minority" is unconstitutional "only if that impact can be traced to a discriminatory purpose." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979); *see also Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977). Plaintiff asserts that *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), is the "model for disparate impact analysis" and claims that, although it concerns employment discrimination under Title VII of the Civil Rights Act of 1964, "the Ninth Circuit has applied this framework to other kinds of civil rights cases." Doc. 91 at 16. Plaintiff does not, however, cite any Ninth Circuit cases supporting this assertion. The Court finds Plaintiff's cited authority entirely inapposite.

Plaintiff also devotes significant portions of her briefing to recounting Sheriff Arpaio's anti-immigrant views. *See id.* at 21. Of course, the Sheriff did not enact ABOA, and to the extent Plaintiff intended to offer this evidence to prove some type of discriminatory enforcement, she has failed to provide the Court with authority or arguments supporting such a claim. This evidence is not relevant to the issue of whether the alleged "disparate impact" of A.R.S. § 13-3961 on non-citizens "can be traced to a discriminatory purpose." *See Feeney*, 442 U.S. at 272. Plaintiff has, in fact, presented no

evidence relevant to that issue. Further, even if Plaintiff had presented evidence of a discriminatory purpose behind A.R.S. § 13-3961, it is unclear she would be able to raise such a claim against these County-level Defendants.

Finally, the Fifteenth Amendment states that "[t]he right of citizens of the United States to vote shall not be denied or abridged . . . ." U.S. Const. amend. XV, § 1. None of the evidence presented in this case appears to have any relation to the denial of voting rights to a United States citizen or any other individual. Accordingly, the Court will grant summary judgment for the Defendants on Count Four.

### D. *Monell* Liability.

*Monell v. Department of Social Services*, 436 U.S. 658, 692 (1978), held that 42 U.S.C. § 1983 "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." The execution of a government policy or custom must be the "moving force" behind the constitutional violation. *Id.* at 694.

Because Plaintiff has failed to establish that an employee of any Defendant violated her constitutional rights, her claim under *Monell* cannot survive. The Court will grant summary judgment for Defendants on Count Five.

## IV. Motions to Strike.

The County Defendants filed a motion to strike Plaintiff's motion for partial summary judgment. Doc. 96. MCSHCD filed a similar motion. Doc. 102. In response, Plaintiff filed a "Notice of Errata" pertaining to her motion for partial summary judgment against the County Defendants (Doc. 97), and similar document pertaining to her motion for partial summary judgment against MCSHCD (Doc. 100). Plaintiff also filed a motion to strike the County Defendants' response to her Notice of Errata. Doc. 117. The Court will deny these motions as moot.

**IT IS ORDERED:**

1. MCSHCD's motion for summary judgment (Doc. 72) and the County Defendants' motion for summary judgment (Doc. 89) are **granted**.

1  2. Plaintiff's motions for partial summary judgment (Docs. 91 and 92) are
2    **denied**.
3  3. All other pending motions (Docs. 96, 102, 117) are **denied as moot**.
4  4. The Clerk shall **terminate** this action.
5  Dated this 22nd day of January, 2014.

David G. Campbell
United States District Judge